# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CASE NO. 5:25-cv-00185-MR

| | | |
|---|---|---|
| MICHAEL JUSTIN HAGAMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| LESLIE COOLEY DISMUKES, | ) | |
| Secretary, North Carolina | ) | |
| Department of Adult Correction, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the pro se Petition for Writ of Habeas Corpus filed by Michael Justin Hagaman ("Petitioner") pursuant to 28 U.S.C. § 2254 on November 4, 2025. [Doc. 1]. Also before the Court is the Petitioner's Motion for Reconsideration. [Doc. 6].

## I.    BACKGROUND

The Petitioner is a prisoner of the State of North Carolina.[1] The Petitioner was convicted by guilty plea on November 10, 2021, in Watauga County Superior Court, on ten counts of Second-Degree Sexual Exploitation

---

[1]See https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0510429&searchOffenderId=0510429&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (herein "NCDAC Database"); Fed. R. Evid. 201.

of a Minor, file numbers 18-CRS-50759 to 18-CRS-50762, and one count of Indecent Liberties with a Child, file number 18-CRS-50936. [Doc. 1 at 1]. The pertinent part of the Petitioner's plea agreement set forth that:

> The [Petitioner] shall receive (3) judgments which shall consist of 2 class E judgments and 1 class F judgment. The [Petitioner] shall receive 2 consecutive active sentences in the class E judgments with a minimum of 30 months and a maximum of 96 months. At the expiration of the 2 consecutive class E judgments, the [Petitioner] shall receive 1 active class F sentence consisting of a minimum of 20 months and a maximum of 33 months.

[Doc. 1-1 at 3]. Critically, for purposes of this action, the Petitioner's plea agreement contained no provision concerning how the state trial court should allocate the Petitioner's 1,253 days of pretrial jail credit among the sentences to be imposed upon him in the three judgments.

In accordance with the plea agreement, the state trial court consolidated four counts of Second-Degree Sexual Exploitation of a Minor into one judgment (file number 18-CRS-50759) and imposed on Petitioner an active sentence of 30 to 96 months imprisonment. [Doc. 1-1 at 15]. That court consolidated the remaining six counts of Second-Degree Sexual Exploitation of a Minor into one judgment (file number 18-CRS-50761) and imposed on Petitioner an active sentence of 30 to 96 months imprisonment, consecutively to the term imposed in file number 18-CRS-50759. [Id. at 17]. Finally, the state trial court placed the Petitioner's conviction for the single

count of Indecent Liberties with a Child into its own judgment (file number 18-CRS-50936)  and imposed on Petitioner an active sentence of 20 to 33 months imprisonment, consecutively to the terms imposed in file numbers 18-CRS-50759 and 18-CRS-50761. [Id. at 19].

Also on November 10, 2021, Petitioner appeared before the Watauga County Superior Court for probation revocation proceedings involving two prior drug convictions, file numbers 14-CRS-50086 and 14-CRS-50087  [Id. at 20]. The Petitioner was previously convicted on June 4, 2015, of two separate counts of selling heroin and received consecutive sentences of 13 to 25 months imprisonment, suspended, and placed on supervised probation for 36 months. [Id.]. Due to the Petitioner's commission of new criminal conduct while on probation (the eleven sex offenses), the state trial court revoked Petitioner's probation in each instance and imposed active sentences of 13 to 25 months imprisonment, consecutive to each other and consecutive to the three sex offense judgments.  [Id. at 22-23].

The Petitioner gave oral notice that he was appealing all three judgments encompassing his eleven sex offense convictions. [Doc. 1-1 at 24]. On direct review to the North Carolina Court of Appeals, Petitioner raised the single ground he reserved in his plea agreement – challenging the trial court's adverse decision on his motion to suppress filed in his Indecent

Liberties case, file number 18-CRS-50936. "As [Petitioner] states in his brief and confirmed by the record, '[h]e only filed a motion to suppress in file number 18-CRS-50936, in which he ultimately pled guilty to one count of indecent liberties. . . . Accordingly, [Petitioner's] appeal and appellate brief focuses [sic] exclusively on file number 18-CRS-50936." State v. Hagaman, 292 N.C. App. 194, 196, 897 S.E.2d 163, 165 (2024).

Ultimately, the appellate court found no error in the trial court's order denying Petitioner's suppression motion and thereby affirmed the Petitioner's convictions and sentences in a published opinion filed January 16, 2024. Id. Petitioner did not seek further direct review with the North Carolina Supreme Court or the U.S. Supreme Court. [Doc. 1 at 2-3].

While Petitioner's direct appeal was pending, he filed his first Motion for Appropriate Relief ("MAR1") November 16, 2022. [Doc. 1 at pp. 3; 17; 30]. According to Petitioner, the

> MAR1 raised claims in the sentencing phase of his guilty plea proceedings, as well as claims in the other file numbers unrelated to the matters raised in this habeas petition. MAR1 was dismissed without prejudice in part, and denied as procedurally defaulted in part on April 26, 2023. The court did award Petitioner one additional day of jail credit.

[Doc. 1 at 17]. The Petitioner sought appellate review of the trial court's adverse order on his MAR1 which the North Carolina Court of Appeals dismissed without prejudice December 8, 2023. [Id. at pp. 4; 30].

4

According to Petitioner, he then

> [R]efiled the certiorari petition September 17, 2024. It was dismissed with prejudice on procedural grounds in part, denied in part, dismissed without prejudice in part, and allowed in part December 18, 2024. Petitioner sought an en banc rehearing on January 6, 2025, which was denied February 4, 2025. He moved the Court of Appeals for reconsideration on February 13, 2025, and following denial of that motion February 21, 2025, Petitioner petitioned the N.C. Supreme Court for discretionary review March 4, 2025, which was denied May 21, 2025 see State v. Hagaman, 915 S.E.2d 178 (NCSC 2025).

[Doc. 1 at 18].

Petitioner filed his second Motion for Appropriate Relief ("MAR2") November 15, 2024, which the trial court denied May 15, 2025. [Id.]. The Petitioner sought appellate review of the trial court's adverse order on his MAR2 which the North Carolina Court of Appeals denied September 11, 2025. [Id.].

On June 16, 2025, Petitioner filed a state habeas petition in the North Carolina Supreme Court "challenging the validity of the judgment revoking his probation in 14CRS050086 due to there being a change in the sentence contained in the written judgment from the sentence pronounced in open court[.]" [Doc. 1 at 18]. The state habeas petition was denied June 18, 2025. [Id.].

Petitioner filed his § 2254 action in this Court on November 4, 2025. [Doc. 1]. In this matter, the Petitioner asserts four claims for relief with regard

5

to his three sex offense judgments (Grounds One through Four), and one claim for relief with regard to his probation revocation judgments (Ground Five). [Doc. 1 at 23-29]. On March 9, 2026, the Court conducted its initial review of the petition filed in this matter. [Doc. 5]. The Court came to the preliminary conclusions that Petitioner was not entitled to any relief on his claims regarding his three sex offense judgments, and that Petitioner's claim regarding his probation revocation judgments was untimely.[2] The Court then directed the Petitioner to show cause why his § 2254 action should not be dismissed. [Id.].

On March 31, 2026, the Petitioner filed three documents. In the first document, his "Response to Court Order and Notice of Dismissal of Claim," Petitioner voluntarily dismisses without prejudice the claim contained in Ground Five of his § 2254 petition pertaining to the probation revocation judgments. [Doc. 6]. Petitioner's second and third documents are his motion asking the Court to reconsider dismissing this action [Doc. 7], and his brief in support thereof. [Doc. 8].

---

[2] The Court notes that the Petitioner dismissed without prejudice his single claim in Ground Five pertaining to the judgments entered following the revocation of his probationary sentences. [Doc. 6]. Accordingly, this claim is dismissed, and no further discussion of the Petitioner's probation revocation judgments is warranted.

6

## II. DISCUSSION

In reviewing a § 2254 petition, this Court is guided by Rule 4 of the Rules Governing Section 2254 Cases, which directs the district courts to dismiss a petition when it plainly appears from the petition and any exhibits that the petitioner is not entitled to relief. Rule 4, 28 U.S.C. foll. § 2254.

### A. The Petitioner is Entitled to No Relief on His Remaining Claims in Grounds One through Four.

### 1. The Petitioner Raises No Federal Claims.

In this action, the Petitioner raises four purported federal constitutional claims regarding the convictions and sentences contained in his three sex offense judgments. In Ground One, the Petitioner asserts that N.C. Gen. Stat. § 15-196.2 is unconstitutional as applied to him in violation of the due process and equal protection clauses of the U.S. Constitution. [Doc. 1 at 5]. In Ground Two, the Petitioner asserts his attorney was ineffective for allowing him to enter guilty pleas "unknowingly" because counsel did not include in the plea agreement specific allocations of pretrial detention time credit. [Id. at 7]. In Ground Three, the Petitioner asserts the state trial court's plea acceptance procedure was constitutionally infirm. [Id. at 8]. Finally, in Ground Four, the Petitioner alleges the state trial court's "misapprehension of the law deprived Petitioner of his liberty interest without due process required by U.S.C.A. Const. Amend. V and XIV." [Id. at 10]. Even though

7

the Petitioner has adorned his claims in federal constitutional garb, the central theme of his grievance is simply that he is serving more prison time, pursuant to the operation of state law, than he expected – an expectation that he never demanded become a formal component or material part of his written plea agreement.

While the Petitioner was a pretrial detainee awaiting the resolution of his sex offender charges, he accumulated 1,253 days of sentencing credit that he ultimately wanted apportioned to his three consecutive sex offense judgments in a particular way. [Doc. 1-1 at 5-7]. The Petitioner, during his plea/sentencing hearing, provided the state trial court with three certifications of confinement credit, and asked the court to allocate his pretrial detention time in the following manner: 450 days credited to his first judgment, 450 days credited to his second judgment, and 353 days credited to his third judgment. [Id.]. Doing so, according to the Petitioner, would consume his total pretrial detention time, and equally important, allocating the specified jail time credits to each judgment would still enable him to earn in prison additional credits "to reduce each sentence down to its respective minimum." [Doc. 1 at 24]. As the Petitioner explains,

> Under [North Carolina's] Structured Sentencing Act (the Act), N.C.G.S. 15A-1340.10 et seq, sentences are imposed in a range of months, with each sentence having a minimum and a corresponding maximum term. Sentences may be reduced to

8

their minimum by earning sentence reduction credits (SRC) during the service of that particular sentence. N.C.G.S. 15A-1340.13 and 148-13. However, SRC only effect the sentence currently being served – SRC may not be applied retroactively to completed sentences or banked to roll over to future sentences. In the case of future consecutive sentences, each individually imposed sentence is calculated and executed independently. Each individual sentence must be completed before the next sentence begins.

[Doc. 1 at 19 (errors uncorrected)]. Accordingly, if too much pretrial detention time were allocated to any one of the Petitioner's three judgments, the jail credit so applied would reduce the sentence under such judgment to an extent that insufficient time would remain to allow the Petitioner to earn SRCs during his prison stay so as to lower that sentence to the minimum permitted by North Carolina law.

During the Petitioner's proceedings in the state trial court, that court did not allocate the Petitioner's jail credit time as he requested. Instead, it credited the first sex offense judgment with 1,080 days pretrial confinement [Doc. 1-1 at 15], credited the second sex offense judgment with 173 days pretrial confinement [id. at 17], and credited the third sex offense judgment with none. [Id. at 19]. "The court used 1,080 of the 1,253 days of available credit against the 30-96 month sentence in the Petitioner's first judgment … leaving only 15 days remaining on the maximum active portion of that sentence (96 months – 60 months post release). This precluded any

possibility of Petitioner reducing this sentence through earning SRC[.]" [Doc. 1 at 20].

In this habeas action, the Petitioner essentially contends that the state trial court misinterpreted or misapplied N.C. Gen. Stat. § 15-196.2 when failing to allocate his pretrial detention time credits as he requested. While the Petitioner seeks to recast this claim as regarding the deprivation of certain federal constitutional rights, it is really a claim grounded solely in North Carolina sentencing law.

A state inmate may invoke federal habeas jurisdiction only if he can establish that he is a person convicted under a state court judgment and that he is in "custody in violation of the Constitution, laws, or treaties of the United States." 28 U.S.C. § 2254. The Supreme Court has made clear that a federal habeas court will not review any claim that concerns how a state court construes or applies its own statutory law and precedent.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); see also Pulley v. Harris, 465 U.S. 37, 41, 104 S. Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

Estelle v. McGuire, 502 U.S. 62, 63 (1991).

Despite Petitioner's unsuccessful effort to persuade the state trial court to adopt his state-law claim concerning the allocation of his jail credit, he cannot now seek review of the state's judgments in this habeas action absent some genuine federal law violation. Because no such federal law violation is present, the Petitioner's remaining claims in Grounds One through Four of his § 2254 petition are without merit.

### 2. Exhaustion and Procedural Default.

To the extent that any federal constitutional claims might exist at all, the Petitioner has not properly exhausted them, and they are procedurally defaulted. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a state prisoner, before seeking habeas relief under § 2254, must exhaust his available state remedies. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement is not a jurisdictional prerequisite to federal habeas corpus relief but rather a matter of comity imposed by statute. Granberry v. Greer, 481 U.S. 129, 132–33 (1987). Exhaustion in the context of a § 2254 action simply means that the state courts are to be afforded the first review of federal constitutional challenges to state convictions in order to give the state court system "an opportunity to correct its own constitutional errors." Preiser v. Rodriguez, 411 U.S. 475, 490 (1973); Duncan v. Henry, 513 U.S. 364 (1995). Further, a prisoner must seek review of his federal claims all the

way through to the highest state court with jurisdiction to consider the claim. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b) & (c). "The habeas petitioner must raise his claim before every available state court, including those courts . . . whose review is discretionary." Jones v. Sussex I State Prison, 591 F.3d 707, 712–13 (4th Cir. 2010) (quoting Baldwin v. Reese, 541 U.S. 27, 29 (2004)) (internal alterations omitted). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (citing Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir.), cert. denied, 522 U.S. 833 (1997)).

As relevant to the present matter, the exhaustion requirement demands that the petitioner "do more than scatter some makeshift needles in the haystack of the state court record. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick." Mallory v. Smith, 27 F.3d 991, 994–95 (4th Cir. 2001) (quoting Martens v. Shannon, 836 F.2d 715, 717 (1st Cir. 1988)).

Phrased differently, if a defendant convicted in state court fails to identify and pursue a federal constitutional claim in the appropriate state forum through final review, the state is deprived of the opportunity to evaluate

the claim, and the defendant thereby forfeits it. <u>Kornahrens v. Evatt</u>, 66 F.3d 1350, 1357 (4th Cir. 1995) (by not following proper state appellate procedure, petitioner caused the state courts to rule against him solely on state-law procedural grounds). Federal habeas review in this circumstance is inappropriate because the state's judgment in such a case is based on an "independent and adequate state ground" since no federal constitutional claim was ever presented to or reviewed by the state. <u>Coleman v. Thompson</u>, 501 U.S. 722, 729–30 (1991).

With the foregoing in mind, the Petitioner would need to have raised the substance of his claims contained in each of the four Grounds with the state trial court during his plea/sentencing hearing in order to preserve them for § 2254 review. Beginning with Ground Two for example, the Petitioner asserts that his attorney was ineffective because "counsel did not make the division of jail credit explicit in the written plea agreement." [Doc. 1 at 7]. The Petitioner, however, was not a mere bystander to his state criminal proceedings, subject to the whim of his attorney. On the contrary, the Petitioner, together with his attorney, negotiated a unique and nuanced plea agreement with the state. [Doc. 1-1 at 1-4]. More importantly, however, and according to the Petitioner himself, he is very experienced with North Carolina sentencing law.

Because Petitioner had previously served consecutive sentences in the custody of Respondent, he was familiar with how those sentences are calculated. He knew that he had more jail credit than the 36 month active maximum term of the sentence in 18CRS5050759 (30-96 minus 60 months post-release=36), and that if that credit was used to complete that maximum term, he would lose the opportunity to reduce that sentence by earning SRC [sentence reduction credits], and would not get the full benefit of the agreement.

[Doc. 1 at 19].

Given the Petitioner's significant knowledge of North Carolina sentencing law and his experience serving time in the state's prison,[3] it was incumbent upon him either to insist that his plea agreement contain the exact jail credit division he sought, or refuse to sign the plea agreement. If the Petitioner perceived that his counsel was standing in the way in this regard, he could have moved the state trial court to discharge his court-appointed attorney and then could have explained to the court why he wished to do so. At the very least, the Petitioner had the opportunity to inform the state trial court not once, but twice – during his plea colloquy and later during his sentencing hearing – that his decision to plead guilty was premised at least in part on the manner in which he desired his pretrial detention time apportioned among the judgments, if that were indeed the case. The

---

[3] The Petitioner's criminal history is further borne out by the NCDAC Database which catalogues his numerous convictions and sentences spanning the last 30 years.

Petitioner chose not to speak up either time:

> THE COURT:  So is this plea arrangement as set forth within the transcript and as I have just described it to you correct as being your full plea arrangement?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Do you now personally accept this arrangement?
>
> THE DEFENDANT:  I do.
>
> THE COURT:  Other than the plea arrangement between you and the prosecutor, has anyone promised you anything or threatened you in any way to cause you to enter this plea against your wishes?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you enter this plea of your own free will, fully understanding what you're doing?
>
> THE DEFENDANT:  I do.

[Doc. 1-1 at 9].

Following his plea colloquy, at the sentencing phase of Petitioner's hearing, and even after the court allocated his pretrial detention time far differently than Petitioner's counsel requested, Petitioner still said nothing:

> THE COURT:  … I believe that concludes all of his judgments unless there are any questions.
>
> [DEFENSE COUNSEL]: I have one thing to put on the record. Mr. Hagaman will give notice of appeal as it relates to 18-CRS-50759 through 762.  And, again, to the offense of [sic] in 18-CRS-50936, he would give notice of appeal.

15

THE COURT: An appeal as to those file numbers?

[DEFENSE COUNSEL]: Yes, sir.

THE COURT: All right. Note that the defendant has given notice of appeal in 18-CRS-50759, 50760, 50761, 50762 and 18-CRS-50936. I will appoint the Appellate Defender but his release is denied. All right. And that will conclude this matter unless there are any questions.

[DEFENSE COUNSEL]: No, sir.

THE COURT: Mr. Hagaman, do you have any questions?

THE DEFENDANT: No, sir.

[Doc. 1-1 at 24].

Had the Petitioner alerted the state trial court "face-up and squarely" to his contention that his plea depended upon the allocation of his jail credit during his plea/sentencing proceeding, or how the trial court's failure to address this claim implicated his federal constitutional rights, that court would have addressed all the issues head-on. At that same time, if the trial court remained steadfast in its jail time division, the Petitioner could have brought directly to the court's attention the substance of his purported federal constitutional claims asserted in Grounds One, Two, Three, and Four. If all these efforts proved unsuccessful before the state trial court, the Petitioner

16

could then have moved to withdraw his plea and proceed to trial.[4] If such withdrawal motion were denied, the Petitioner, not more than 10 days after entry of said judgments, could have filed a motion for appropriate relief for any error committed by the trial court. N.C. Gen. Stat. § 15A-1414(a). The Petitioner took none of these actions.

If the Petitioner had taken any of the aforesaid actions in the state trial court and been denied relief, he could then have sought redress on appeal. But he did not do this either. As the Petitioner candidly points out, he raised none of the claims in his first four Grounds before the North Carolina Court of Appeals, shifting the blame to appointed appellate counsel who allegedly "refused to raise them." [Doc. 1 at 6; 7; 9-10]. Since Petitioner did not bring any of his purported constitutional claims directly before the state trial court, and thereafter on direct appeal to the North Carolina Court of Appeals and Supreme Court, they are unexhausted, and as will be seen immediately below, procedurally defaulted. This is so, as explained in Section II.A.1. above, because federal courts are only permitted to review "those state-court decisions that implicate federal constitutional rights." Kornahrens v. Evatt, 66

---

[4] Ironically, the Petitioner was not apprehensive at all about the prospect of going to trial. "Petitioner felt certain of acquittal at trial for the charges in 18CRS5050936. He didn't believe the State's evidence could support convictions for more than the lesser included offenses of 3rd Degree Sexual Exploitation of a Minor in the 18CRS5050759-62 cases." [Doc. 1 at 24-25].

F.3d 1350, 1357 (4th Cir. 1995).

"A procedural default ... occurs when a habeas petitioner fails to exhaust available remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998) (quoting <u>Coleman</u>, 501 U.S. at 735 n.1).

In this case, the Petitioner never brought any of his purported constitutional claims before the state trial court in the first instance when he was twice provided the opportunity to do so, and likewise never pursued any of them on direct appeal. Any such arguments were therefore waived in the trial court, <u>In re M.R.J.</u>, 378 N.C. 648, 657, 862 S.E.2d 639, 645, (2021) (unlike the issue of subject matter jurisdiction, which may be raised at any time, objections to procedural matters like venue are waived if not taken in apt time in the trial court), and abandoned on appeal. N.C.R. App. P. 28(a) ("The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned."). The Petitioner, who was present throughout his plea/sentencing hearing in state court, was also aware of everything that transpired during those proceedings. Had the Petitioner brought his purported constitutional claims in his MAR1, they would have been barred

by N.C. Gen. Stat. § 15A-1419(a)(2)[5] (MAR should be denied when, upon a previous appeal, the defendant was able to adequately raise the ground or issue underlying the present motion but did not do so). And if the Petitioner attempted to raise these purported constitutional claims now in yet another MAR, they would be barred by N.C. Gen. Stat. § 15A-1419(a)(1) (MAR should be denied when, upon a previous MAR, the defendant was able to adequately raise the ground or issue underlying the present motion but did not do so).

The only way for the Petitioner to avoid procedural default is through a showing of "cause and actual prejudice." Reed v. Ross, 468 U.S. 1, 11 (1984) (citation omitted). "Cause for a procedural default . . . ordinarily requires a showing of some external impediment preventing [the party] from constructing or raising the claim." Murray, 477 U.S. at 492. Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that " 'the errors at ... trial created a possibility of prejudice," but rather that the constitutional violation "worked to his actual and substantial disadvantage.' " Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

---

[5] This appears to be what, in fact, happened. According to the Petitioner, "MAR1 was dismissed without prejudice in part, and **denied as procedurally defaulted in part** on April 26, 2023." [Doc. 1 at 17 (emphasis added)].

19

The Petitioner can show neither cause nor actual prejudice for his defaulted claims. Again, the Petitioner was present throughout the entirety of his state criminal case and has not shown (nor does the record reflect) any "external impediment" that prevented him from informing the trial court that the allocation of his pretrial detention credit among his three judgments was a material part of his agreement to plead guilty as he now asserts. This is especially so given that the trial court explicitly permitted him the opportunity to do so on two occasions. Even if the Petitioner could make a proper "for cause" showing, which he cannot, any alleged error could not have worked to his actual and substantial disadvantage because his purported federal claims are meritless.

Nevertheless, the Petitioner insists he "is not serving the sentence he agreed to. What he agreed to was a sentence that would afford him the opportunity to be released back into the community after serving 106 months in prison. What he is serving is a sentence under which release isn't possible until at least 112 months have been served." [Doc. 1 at 19]. That, however, was the Petitioner's desired *expectation* and not what he and the state agreed upon as formally set forth in writing. The Petitioner executed a detailed plea agreement with the state knowing full well he faced an aggregate sentence of 106 months up to 275 months in prison. [Doc. 1 at 1].

The fact that the Petitioner might serve more than 106 months is of no moment since he will not and cannot serve more than 275 months in custody. *That* was his bargain. The Petitioner, therefore, is entitled to no relief.

**B.    The Sex Offense Judgments Have Expired**

Pursuant to 28 U.S.C. § 2254(b)(1), a federal district court may only entertain an application for writ of habeas corpus if the applicant is "a person in custody pursuant to the judgment of a State court[.]" Id.

The Petitioner in this matter is indeed an applicant; however, he is no longer in custody pursuant to any of the sex offense judgments he seeks to challenge. NCDAC Database at 1-3. Petitioner's Sexual Exploitation sentences in cases numbered 18-CRS-50759 and 18-CRS-50760 expired November 25, 2021. Id. at 2. Petitioner's Sexual Exploitation sentences in cases numbered 18-CRS-50761 and 18-CRS-50762 expired December 2, 2023. Id. Finally, Petitioner's Indecent Liberties sentence in case numbered 18-CRS-50936 expired July 29, 2025. Id. As the Supreme Court explained, "once the sentence imposed for a conviction has completely expired, the collateral consequences of that conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a habeas attack upon it." Maleng v. Cook, 490 U.S. 488, 492 (1989).

The Petitioner contends that the extinguishment of his three sex offense judgments is irrelevant because he in custody "serving five consecutive sentences imposed by the same court, on the same day." [Doc. 8 at 2]. In support of his position, the Petitioner points to the decision in Garlotte v. Fordice, 515 U.S. 39 (1995). In that case, the Supreme Court held that a § 2254 petitioner, imprisoned under multiple consecutive sentences, remains "in custody" under any such sentence until all are served and may therefore attack the convictions underlying any sentence. Garlotte, 515 U.S. at 41.

The Petitioner, however, reads that decision too broadly. In Garlotte, the petitioner was in custody under a single state judgment that ordered him to serve a three year sentence for a drug conviction to run consecutively with two concurrent life sentences for two murder convictions. Id. In the present matter, the Petitioner was imprisoned based upon judgments arising from his commission of separate and distinct criminal episodes: he was in custody under three judgments encompassing his eleven sex offenses that occurred in 2018, which judgments have expired, and he remains in custody under two judgments for drug offenses that occurred in 2014. Given that the Petitioner's 2014 drug crimes have no temporal or factual relationship to his

2018 sex crimes, the Petitioner is not "in custody" under any of the three expired sex offense judgments as contemplated by Garlotte.

## III.   CONCLUSION

The Petitioner voluntarily dismissed Ground Five of the petition. [Doc. 6]. As explained herein, the Court rejects the Petitioner's remaining claims and will deny Grounds One through Four, inclusive of the § 2254 petition.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (noting that, in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (holding that, when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## O R D E R

IT IS, THEREFORE, ORDERED that:

1.      Grounds One through Four, inclusive, of the Petition for Writ of Habeas Corpus [Docs. 1] are **DENIED** and **DISMISSED**;

2.      The Petitioner's Motion for Reconsideration [Doc. 7] is **DENIED**;

3.    The Court **DECLINES** to issue a certificate of appealability

pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases; and

4.    The Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Signed: May 20, 2026

Martin Reidinger
Chief United States District Judge